COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ROGELIO AMOS ARZATE,                               )

                                                                              )              
No.  08-01-00299-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
384th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20000D05251)

                                                                              )

 

 

O
P I N I O N

 

Rogelio Amos
Arzate appeals his conviction for assault of a public servant.  Appellant waived his right to a jury
trial.  After a bench trial, the trial
court found Appellant guilty and assessed punishment at 3 years= imprisonment in the Institutional
Division of the Texas Department of Criminal Justice to run consecutive to
cause number 20000D00726.  In two issues,
Appellant argues that the evidence was insufficient to support the conviction
and to refute his contention that he acted in self-defense.  We affirm the judgment, as reformed.








On October 8,
2000, Appellant was incarcerated at the El Paso County Jail Annex in Pod
500.  That evening, Officer Rodolfo
Marquez was working at Pod 600 when he and other officers received a call from
Officer Mario Correa, requesting assistance in Pod 500.  As one of the responding officers, Officer
Marquez was directed to cell block 505 where he found an inmate, Appellant, in
the day room.  Officer Marquez saw
Officers Ortega and Franco trying to convince Appellant to go inside his cell,
but Appellant continued to walk around with a coffee pot, giving hot water to
the other inmates and refusing to go into his cell.

Officer Marquez
testified that it was around 10:30 at night when he responded to the call,
which according to policy is the time for lockdown.  Under that policy, inmates are put back into
their cells and a headcount is taken for security reasons.  Despite the known policy, Appellant was
arguing with the officers and would not comply with their request to go into
his cell.  Officer Marquez stated that
Appellant=s
behavior was causing the other inmates already in lockdown to become
aggravated, disruptive, and riled up. 
Officer Marquez testified that when that happens, standard procedure is
to take the inmate outside the cell block to a hold-over cell until the inmate
calms down.  Once the inmate calms down,
he is returned.  Four officers, including
Officer Marquez, escorted Appellant without handcuffs from the day room to the
hold-over cell.  During the escort,
Appellant said a lot of obscenities, which he mostly directed at Officers
Ortega and Franco.  Officer Marquez
stated that this caused the other inmates to do the same thing and egg on
Appellant to resist the officers=
orders.  Appellant=s
behavior was causing a security risk because he was inciting the other inmates
to start banging and kicking the cell doors. 
When the officers and Appellant got to the hold-over cell, Appellant
went inside and the officers locked the door.








A few minutes
later, Officer Marquez was called back to Pod 500 to assist officers with
Appellant.  When he and Officer Raymundo
Morales arrived, Appellant was yelling and screaming, and pounding on the cell
door.  Officer Franco was at the door
trying to calm Appellant down, but Appellant kept on shouting and banging at
the door.  For Appellant=s safety, the officers decided that
Appellant should be restrained.

Detention Officer
Daniel Brown was also called to assist with Appellant.  When he arrived, the door to the hold-over
cell was open.  Officer Brown observed
four other officers trying to calm down Appellant, who was yelling obscenities,
not listening, and not cooperating.  As
Officer Brown approached the cell door, the officers were telling Appellant to
turn around so they could restrain him. 
Appellant told the officers he wanted to speak to a sergeant.  Appellant then started to make his way out of
the hold-over cell.  He was approximately
five feet out of the cell when Officer Brown stepped in front of him to block
his way.  As Officer Brown attempted to
grab Appellant=s left
hand, Appellant brought up his hand and struck Officer Brown in the face.  Officer Brown testified that Appellant hit
him with an open hand on the right side of his face and knocked his glasses off
his face.  Officer Brown stated that he
suffered pain from the blow on his right eye and right side of his ear.  Officer Brown also stated that he had redness
on the right side of his face and was attended to by a nurse at the facility
clinic.  However, Officer Brown
experienced no bruising from the blow and did not see a doctor.  Officer Brown testified that in his opinion,
Appellant intended to strike him in the face. 
At the time of the incident, Officer Brown was dressed in a Sheriff=s Department uniform and discharging an
official duty.  After Appellant struck
Officer Brown, the officers grabbed Appellant, placed him on the ground, and
restrained him.  According to Officer
Marquez, none of the officers threatened Appellant in any way before Appellant
struck Officer Brown.  Officer Brown also
testified that none of the officers touched Appellant until Appellant struck
him in the face.








After the State rested,
Appellant called five witnesses to testify, three inmates and two detention
officers.  Inmate Raul Zubia testified
that he was in the same Pod as Appellant and in lockdown.  According to Mr. Zubia, Appellant asked
permission from one of the officers to get some water and the officer let him
go up the stairs and give another inmate hot water.  When Appellant was finished doing that, he
came downstairs.  An officer told Appellant
that he should be in his cell and Appellant said Athat=s where I=m
going, sir.@  A few minutes later, the officers came back
and took Appellant out of his cell and removed him from the Pod.  Mr. Zubia recalled Appellant turning around
as they left and that he made statements which included, ALook at me.  I don=t
have anything so you can witness that I don=t
have any bruises with me.  So I=m just going out, what they=re telling me to do, and that=s what I=m
going to do.  I don=t want to do anything -- I didn=t do anything wrong.@ 
Mr. Zubia could not see what occurred in the hold-over cell.  However, Mr. Zubia heard yelling and
screaming, like the officers were beating up Appellant.  He did not hear any banging or kicking on the
hold-over cell door, but heard some banging on the walls.  Appellant returned a few hours later
unescorted with bruises on his neck, arm, and leg.  Mr. Zubia noticed that Appellant walked like
he was dizzy.  At the time, Mr. Zubia
only observed some bruises on Appellant=s
right cheek, but Appellant showed him the other bruises the next day.

Inmate George
Ventura testified that Appellant did not comply with the officers= orders at first, but then Appellant
did go into his cell after giving out the hot water to fellow inmates.  According to Mr. Ventura, officers came and
told Appellant to step out of his cell and then took him outside.  Like Mr. Zubia, Mr. Ventura recalled that as
the officers and Appellant left, Appellant called out to the other inmates to
look at him and see that he had no bruises on his body.  Mr. Ventura could not see what occurred in
the hold-over cell, however, when Appellant returned Mr. Ventura saw that
Appellant had a bump on his face and some bruises.








Inmate Miguel
Hernandez testified that from his cell, he could see the hold-over cell
area.  Mr. Hernandez observed Appellant
standing by the wall and a lot of officers going into the cell.  All of a sudden, he saw a lot of commotion
and then the officers disappeared.  After
that, Mr. Hernandez heard a lot of yelling, but he did not hear anybody
banging or kicking the 

hold-over cell door.  He did not see Appellant try to hit an
officer.  On cross-examination,
Mr. Hernandez acknowledged that his cell was some distance away from the
hold-over cell.  Mr. Hernandez
conceded that from his cell on the second floor he could only see straight down
and was unable to pick up any details.

Appellant also
called two detention officers, Mario Correa and Raymundo Morales.  Officer Correa testified that he made the
calls for assistance with Appellant. 
Officer Correa denied that Appellant walked back into his cell room
after initially refusing to return. 
Officer Correa saw the officers continually instruct Appellant to go
inside his cell.  Appellant=s refusal was agitating the other
inmates.  Officer Correa denied that
Appellant was taken to the hold-over cell as punishment.  Officer Morales likewise testified that
Appellant refused to comply with the officers=
orders and was taken to the hold-over cell. 
Officer Morales stated that on the way to the hold-over cell, Appellant
started yelling, ALook
guys.  I have no marks.@ 
Officer Morales denied that he or the other officers attacked Appellant.

In closing
argument, defense counsel argued that Appellant eventually went into his cell
as ordered.  Counsel asserted that the
officers violated their internal rules when they took him out of the cell and
that Appellant was put in the hold-over cell to be disciplined by the
officers.  Further, Counsel argued that
Appellant drew attention to himself because he knew he was going to get beat up
by the officers.  Appellant did not
attack the officers, but rather passively resisted.








In Issue One,
Appellant contends that the evidence was insufficient to support his conviction
for assault of a public servant. 
Specifically, Appellant argues that there was insufficient evidence to
support the finding that he intended to or did cause bodily injury to Officer
Brown.  Because it is unclear from
Appellant=s brief
whether he complains of legal or factual sufficiency of the evidence, we will
address both.

Legal
Sufficiency 

In determining the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the judgment to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Geesa v. State,
820 S.W.2d 154, 156-57 (Tex.Crim.App. 1991), overruled on other grounds,
Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000).  The test is the same for both direct and
circumstantial evidence cases.  Geesa,
820 S.W.2d at 161.  We do not resolve any
conflict of fact, weigh any evidence, or evaluate the credibility of any
witnesses, as this was the function of the trier of fact.  See Adelman v. State, 828 S.W.2d 418,
421 (Tex.Crim.App. 1992).  Rather, our
duty is to determine if both the explicit and implicit findings of the trier of
fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict.  See
Adelman, 828 S.W.2d at 421-22.  In so
doing, any inconsistencies in the evidence are resolved in favor of the
verdict.  See Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991).








A person commits
the offense of assault of a public servant if he intentionally, knowingly, or
recklessly causes bodily injury to a person he knows is a public servant while
the public servant is lawfully discharging an official duty.  See Tex.Pen.Code
Ann. ' 22.01
(a)(1) and (b)(1)(Vernon 2003).  The
Penal Code defines Abodily
injury@ as Aphysical pain, illness, or any
impairment of physical condition.@  Tex.Pen.Code
Ann. '
1.07(a)(8)(Vernon 2003).  A Apublic servant@
is a Aperson
elected, selected, appointed, employed, or otherwise designated as . . . an
officer, employee, or agent of government.@  Tex.Pen.Code
Ann. '
1.07(a)(41)(A).

Appellant asserts
that there was no evidence that Appellant intended to injure Officer
Brown.  At trial, several officers
testified that Appellant struck Officer Brown in the face with his open
hand.  Officers also testified that at
the time of the incident, Appellant was yelling and banging on the hold-over
cell door.  Officer Brown stated that he
believed that Appellant acted intentionally when Appellant brought his hand up
and hit him on the face.  The trier of
fact may draw upon inferences to establish a defendant=s
culpable mental state.  See Lane v.
State, 763 S.W.2d 785, 787 (Tex.Crim.App. 1989).  These inferences may be drawn from the
defendant=s conduct
and words and from the surrounding circumstances.  See id.; Washington v. State,
930 S.W.2d 695, 700 (Tex.App.--El Paso 1996, no pet.).  In this case, the trier of fact could have
reasonably determined that the evidence presented was sufficient to demonstrate
that Appellant acted intentionally, knowingly, and recklessly, when he brought
up his hand and hit Officer Brown in the face.








Appellant also
asserts that the State failed to prove the essential element of Abodily injury@
because the evidence did not establish that Officer Brown=s injuries amounted to bodily
injury.  The requirement of physical pain
can be satisfied by the victim=s
testimony that he suffered physical pain. 
See Lane, 763 S.W.2d at 786-87; Allen v. State, 533 S.W.2d
353, 354 (Tex.Crim.App. 1976).  ABodily injury@
has been broadly defined to encompass even relatively minor physical contacts
so long as they are more than mere offensive touching.  Lane, 763 S.W.2d at 786; Salley v.
State, 25 S.W.3d 878, 881 (Tex.App.--Houston [14th Dist.] 2000, no
pet.).  Officer Brown testified that
Appellant hit him on the right side of his face with an open hand.  The blow had enough force to knock his
glasses off his face.  Officer Brown also
testified that he suffered pain to his right eye and right side of his
ear.  Officer Brown stated that the blow
resulted in redness to his face.  It
could be inferred from Officer Brown=s
testimony that he experienced some physical pain from the blow.  This testimony was sufficient to support the
element of bodily injury under the Penal Code. 
See Tex.Pen.Code Ann.
' 1.07(a)(8); Lane, 763 S.W.2d at
786.

Viewing the
evidence in a light most favorable to the verdict, a rational trier of fact
could have found beyond a reasonable doubt that Appellant committed the offense
of assault of a public servant.  The
evidence showed that at the time of the offense, it was a policy for inmates to
return to their cells for lockdown.  It
was standard procedure for officers to place a disruptive inmate into a
hold-over cell until he calmed down. 
There was undisputed testimony that an inmate in the hold-over cell,
behaving as Appellant was, could be restrained for his own safety.  At the time of the incident, Officer Brown
was dressed in a manner that clearly identified him as a detention
officer.  The trier of fact could have
reasonably determined that Appellant hit Officer Brown, causing bodily injury,
while Officer Brown was lawfully discharging an official duty.  Therefore, we find that the evidence was
legally sufficient to support his conviction. 
We overrule this portion of Appellant=s
Issue One.

Factual
Sufficiency








In reviewing a
factual sufficiency of the evidence challenge, we consider all of the evidence,
but do not view it in the light most favorable to the verdict.  Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129
(Tex.Crim.App. 1996).  Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly
unjust to allow the verdict to stand, or the finding of guilt is against the
great weight of the available evidence.  Johnson,
23 S.W.3d at 11.  The correct standard a
reviewing court must follow to conduct a Clewis factual sufficiency
review of the elements of a criminal offense asks whether a neutral review of
all the evidence, both for and against the finding, demonstrates that the proof
of guilt is so obviously weak as to undermine confidence in the fact finder=s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  Johnson, 23 S.W.3d at 11.  We review the evidence weighed by the trier
of fact that tends to prove the existence of the elemental fact in dispute and
compare it with the evidence that tends to disprove that fact.  Jones v. State, 944 S.W.2d 642, 647
(Tex.Crim.App. 1996).  Although this
Court is authorized to set aside the fact finder=s
determination under either of these two circumstances, our review must employ
appropriate deference and should not intrude upon the fact finder=s role as the sole judge of the weight
and credibility given to any evidence presented at trial.  See Johnson, 23 S.W.3d at 7. 








In this case,
there was conflicting evidence as to whether Appellant complied with the
officers= order to
return to his cell.  Two inmate witnesses
testified that Appellant eventually complied with the order, returned to his
cell, and within minutes was removed from his cell by the officers.  The officers, however, testified that
Appellant never returned to his cell and was voluntarily escorted to the
hold-over cell.  There was also
conflicting evidence about whether Appellant hit Officer Brown.  An inmate witness testified that from his
vantage point, he did not see Appellant try to hit an officer.  The officers testified that Appellant did
strike Officer Brown and that they then acted to restrain Appellant.  The trial court, as the trier of fact in the
instant case, is the sole judge of the credibility of witnesses, and it may
believe or disbelieve all or any part of a witness=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex.Crim.App. 1986), cert. denied, 488 U.S. 872, 109
S.Ct. 190, 102 L.Ed.2d 159 (1988).  The
trial court apparently resolved the conflicting evidence against
Appellant.  Based upon our neutral review
of the evidence, we cannot conclude that the proof of guilt is either so
obviously weak as to undermine confidence in the trial court=s determination or greatly outweighed
by contrary proof.  We hold that the
evidence is factually sufficient to support the conviction.  Appellant=s
Issue One is overruled in its entirety.

Self-Defense
Theory

In Issue Two,
Appellant asserts that the evidence was insufficient to refute his contention
that he acted in self-defense during the altercation.  We interpret Appellant=s
issue as asserting that a reasonable doubt existed on the issue of
self-defense.  We assume that Appellant
is challenging both the legal and factual sufficiency of the evidence refuting
his self-defense claim and will employ the standards of review discussed above.








Self‑defense
may be raised by the evidence when witnesses testify to the defendant=s words and acts at the time of the
offense.  See Smith v. State, 676
S.W.2d 584, 586‑87 (Tex.Crim.App. 1984). 
A defendant need not testify to raise the issue of self‑defense.  See id.  Once the evidence raises the issue of
self-defense, the State is required to disprove the defense beyond a reasonable
doubt.  Kizart v. State, 811
S.W.2d 137, 139 (Tex.App.--Dallas 1991, no pet.).  This is not a burden of production, i.e., one
which requires the State to affirmatively produce evidence refuting the self‑defense
claim.  Rather, it is one of
persuasion.  See Saxton v. State,
804 S.W.2d 910, 914 (Tex.Crim.App. 1991). 
Self-defense is an issue of fact to be determined by the trier of
fact.  See Nelson v. State,
573 S.W.2d 9, 12 (Tex.Crim.App. 1978). 
The State=s burden
with respect to a self‑defense claim applies to both factual and legal
sufficiency reviews.  See Juarez v.
State, 961 S.W.2d 378, 385 n.5 (Tex.App.--Houston [1st Dist.] 1997, pet.
ref=d)

Here, Appellant
offered the testimony of two inmate witnesses who stated that they observed
Appellant calling out to the inmates as officers escorted him to the hold-over
cell.  Officer Morales also testified
that Appellant yelled out to the other inmates to observe his physical
condition.  On appeal, Appellant argues
that calling attention to himself was a form of self-defense because he knew
that he was going to be beat up by the officers.  Inmate witnesses Zubia and Ventura did not
observe what occurred in the hold-over cell area.  Inmate Hernandez did not see Appellant try to
hit an officer, but conceded during cross-examination that he did not really
have a Aclear clear
view@ of the
hold-over cell.








After reviewing
the evidence in the light most favorable to the verdict, we find the evidence
to be legally sufficient to allow the trier of fact to find against Appellant
on the defensive issue beyond a reasonable doubt.  See Saxton, 804 S.W.2d at 914.  Reviewing all of the evidence presented in a
neutral light, we find that the fact finder=s
rejection of Appellant=s
defensive theory is not so weak as to be clearly wrong and manifestly unjust
nor is it against the great weight and preponderance of the evidence.  See Mata v. State, 939 S.W.2d 719, 724
(Tex.App.--Waco 1997, no pet.). 
Therefore, we hold that the evidence was legally and factually
sufficient to disprove the issue of self-defense beyond a reasonable doubt, as
well as legally and factually sufficient to show the essential elements of the
charged offense beyond a reasonable doubt. 
Appellant=s Issue
Two is overruled.

In its brief, the
State notes that the written judgment and sentence in this cause recites that
Appellant pled guilty, but the record shows that Appellant pled not guilty and
proceeded to a bench trial.  The State
requests that we correct the judgment and sentence to reflect accurately
Appellant=s plea of
not guilty.  Under Tex.R.App.P. 43.2(b), we may modify and
affirm a trial court=s
judgment.  We therefore reform the trial
court=s
judgment to reflect that Appellant pled Anot
guilty@ to the
charges and affirm the remainder of the judgment.

For the reasons
stated above, we affirm the trial court=s
judgment, as reformed.

 

 

March
27, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)